**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT I. REESE, JR.,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COUNTY OF SACRAMENTO; DUNCAN BROWN, Sacramento County Sheriff's Department Deputy (Badge #1220); ZACHARY ROSE, Sacramento County Sheriff's Department Deputy (Badge #832),<br>*Defendants-Appellees.* | No. 16-16195<br><br>D.C. No.<br>2:13-cv-00559-GEB-KJN |

| | |
|---|---|
| ROBERT I. REESE, JR.,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>COUNTY OF SACRAMENTO; ZACHARY ROSE, Sacramento County Sheriff's Department Deputy (Badge #832),<br>*Defendants-Appellants*,<br><br>and | No. 16-16230<br><br>D.C. No.<br>2:13-cv-00559-GEB-KJN<br><br><br>OPINION |

DUNCAN BROWN, Sacramento
County Sheriff's Department Deputy
(Badge #1220),

*Defendant.*

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted December 8, 2017
San Francisco, California

Filed April 23, 2018

Before:  Milan D. Smith, Jr. and Sandra S. Ikuta, Circuit
Judges, and Diane J. Humetewa,[*] District Judge.

Opinion by Judge Humetewa

---

[*] The Honorable Diane J. Humetewa, United States District Judge for
the District of Arizona, sitting by designation.

# SUMMARY[**]

---

## Civil Rights

The panel (1) affirmed the district court's decision granting defendants' post-verdict motion for judgment as a matter of law on the issue of qualified immunity in a 42 U.S.C. § 1983 action alleging excessive deadly force; (2) reversed the district court's post-verdict decision granting summary judgment sua sponte for the defendants on plaintiff's California Bane Act claim, and (3) affirmed the denial of defendants' requests for post-trial relief.

A sheriff's deputy shot plaintiff in his apartment during a response to an anonymous 911 call after plaintiff opened his front door holding a large knife. The panel noted the jury's verdict that the deputy violated plaintiff's right to be free from excessive force was sufficient to deny him qualified immunity under the first prong of the qualified immunity analysis, which considers whether there has been a violation of a constitutional right. Nevertheless, addressing the second prong of the analysis, the panel determined that plaintiff failed to identify any sufficiently analogous cases showing that under similar circumstances a clearly established Fourth Amendment right against the use of deadly force existed at the time of the shooting. The panel concluded that none of plaintiff's cases squarely governed the situation that the deputy confronted such that he would have had clear warning that his use of deadly force was objectively unreasonable. The panel therefore affirmed the district court's ruling that

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the deputy was entitled to qualified immunity on the Fourth Amendment excessive force claim.

In reversing the district court's post-trial grant of summary judgment in favor of defendants on the California Bane Act claim for excessive force, the panel held that the district court erroneously concluded that the Bane Act requires a separate showing of coercion beyond that inherent in the use of force. The panel further determined that the Bane Act requires a specific intent to violate the arrestee's right. The panel concluded that although there was no evidence of coercion *independent* from the deputy's use of objectively unreasonable force, it could not conclude that no reasonable jury could find that the deputy had a specific intent to violate plaintiff's Fourth Amendment rights. Accordingly, the panel remanded the Bane Act claim for a new trial.

Addressing defendants' cross-appeal, the panel held that plaintiff's claims were not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because defendants identified nothing in the record showing the specific factual basis for plaintiff's "no contest" plea to violating California Penal Code § 417(a)(1). Without such information, the district court could not determine that plaintiff's claim of excessive force in this case would call into question the validity of his misdemeanor weapon conviction. The panel further held that: (1) the jury's award of $150,000.00 for future non-economic loss was supported by substantial evidence; (2) any error in the jury instruction on plaintiff's Fourth Amendment claim that authorized liability if it could be shown that defendants shot at plaintiff was harmless; (3) the district court did not abuse its discretion when it failed to exclude certain expert testimony; and (4) there was no error in excluding the

deposition testimony of a defense witness who did not appear in court to testify.

## COUNSEL

Dale K. Galipo (argued), Law Office of Dale K. Galipo, Woodland Hills, California; Eric Grant, Hicks Thomas LLP, Sacramento, California; Stewart Katz, Law Office of Stewart Katz, Sacramento, California; for Plaintiff-Appellant.

John R. Whitefleet (argued) and Thomas L. Riordan, Porter Scott, Sacramento, California, for Defendants-Appellees.

## OPINION

HUMETEWA, District Judge:

Plaintiff/Appellant Robert Reese, Jr. ("Reese") appeals the district court's decision granting Defendants'/Appellees' ("the Defendants") post-verdict motion for judgment as a matter of law on the issue of qualified immunity. Reese further appeals the district court's post-verdict decision granting "summary judgment *sua sponte*" for the Defendants on the California Bane Act ("Bane Act") claim. The Defendants cross-appeal the district court's denial of their requests for post-trial relief. Defendants also argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) should have barred Reese's claims because his misdemeanor criminal conviction for exhibiting a knife arose out of the same acts. We have jurisdiction under 28 U.S.C. § 1291.

**Background**

Robert Reese, Jr., filed this civil rights claim against the County of Sacramento and two of its Deputy Sheriffs, Duncan Brown and Zachary Rose, following a shooting incident on March 25, 2011. In the hours leading up to the incident, Reese had consumed large quantities of alcohol, marijuana, and cocaine at a neighborhood party. The party ended when Reese and his neighbor Nathan began arguing over whether Reese had taken Nathan's bottle of vodka. Sometime after the party, Nathan's girlfriend went to Reese's apartment to retrieve the vodka. Reese answered the door holding a knife and refused to hand over the bottle. Around 4:30 a.m., Reese and Nathan exchanged several text messages, some containing racial epithets. Shortly thereafter, Reese heard knocking on his apartment door. He assumed it was Nathan. It was not.

Deputies Brown and Rose and several other police officers arrived at Reese's apartment complex shortly before 5:00 a.m. They were responding to an anonymous 911 call that an African-American male had exited apartment 144 and fired an automatic gun. The caller also stated that the male was possibly crazy, under the influence of drugs, had a knife, and was back inside apartment 144.

Deputy Rose decided that someone should knock on the door of apartment 144 to further investigate the 911 report. The deputies decided that Deputy Brown, who had a rifle, would stand back about 15 feet to cover the doorway while Deputy Rose would knock on the apartment door. Deputy Rose, concealing himself, stood to the side of the door and other deputies lined up behind him. Deputy Rose, while holding his handgun in one hand, knocked on the door with

his flashlight. Deputy Brown testified that after Deputy Rose knocked, "the door flew open. I saw a figure coming out, arm up, extended, large knife[.]" Upon seeing the knife, which he describes as being within a foot of Deputy Rose's neck, Deputy Brown fired his rifle at Reese. Deputy Rose, seeing Reese with the knife in his hand, simultaneously backed away from the door of the apartment. The next events occurred in what Deputy Rose describes as a "millisecond." After the rifle shot, Deputy Rose advanced into the apartment expecting to see Reese shot and incapacitated. Instead he saw Reese standing upright in the apartment. He could not, however, see Reese's hands. Deputy Rose immediately fired his handgun, aiming it at Reese's chest. He was approximately three feet away from Reese. Reese fell backward toward a couch and Deputy Rose saw blood on Reese's clothing and the carpet. At trial, Deputy Rose testified that he was uncertain whether it was his or Deputy Brown's shot that actually hit Reese but believed that it was his. Reese survived the incident and thereafter asserted civil rights claims against the County and Deputies Brown and Rose.

After a seven-day jury trial, the jury returned a verdict in favor of Reese on his Fourth Amendment excessive force and Bane Act claims against Deputy Rose and the County. The jury also returned a verdict in favor of Deputy Brown, which Reese does not appeal. In separate interrogatories, the jury determined that Deputy Rose's pistol round, not Deputy Brown's rifle round, hit Reese. The jury also found that Reese had a knife in his hand in an elevated position when he opened the door. They answered "no" to the question of whether Reese brandished the knife at Deputy Rose. Question 14 asked the jury "[a]t the time Deputy Rose fired his shot, did it appear that Plaintiff posed an immediate threat

of death or serious physical injury to Deputy Rose?" The jury answered "no." The jury awarded Reese $534,340.00 in compensatory damages including $150,000.00 for non-economic loss.

After the jury returned its verdict, the Defendants moved for a judgment as a matter of law asserting that Deputy Rose was entitled to qualified immunity, or alternatively that Reese failed to prove by a preponderance of the evidence all of the elements required for a Fourth Amendment battery and Bane Act violation. The Defendants asserted that the evidence at trial insufficiently established that it was Deputy Rose's shot that hit Reese, and thus Reese had not met his burden of showing Rose had caused Reese's harm. Finally, the Defendants asserted that Reese's claims were barred by *Heck v. Humphrey* because he pleaded no contest to a violation of California Penal Code section 417(a)(1). Defendants also moved for a new trial, arguing that the district court erred in its instruction to the jury on Reese's Bane Act claim.

The district court determined that Deputy Rose was entitled to qualified immunity on Reese's Fourth Amendment claim. The district court then granted "summary judgment *sua sponte*," finding that Defendants were entitled to judgment as a matter of law on Reese's Bane Act claim, concluding that Defendants' proposed jury instruction on that claim should have been given. The district court denied Defendants' other requests for post-trial relief, including their *Heck v. Humphrey* claim. Reese appealed the district court's post-trial rulings in favor of Defendants. Defendants filed a cross-appeal reasserting their *Heck v. Humphrey* claim and asserting that the district court erred in several of its evidentiary rulings and its award of future non-economic loss.

## Analysis

## I.  Defendants' Post-Verdict Motion for Judgment as a Matter of Law

The Court of Appeals "review[s] de novo the grant or denial of a renewed motion for judgment as a matter of law." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "A renewed motion for judgment as a matter of law is properly granted only 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (quoting *Pavao*, 307 F.3d at 918). Thus, although the Court does not defer to the district court's decision on the motion, it gives "significant deference to the jury's verdict and to the nonmoving parties . . . when deciding whether that decision was correct." *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

### A.  Qualified Immunity

Reese first challenges the district court's post-verdict ruling that Deputy Rose is entitled to qualified immunity on his Fourth Amendment excessive force claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open

legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson*, 555 U.S. at 231). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232).

Here, the jury found Deputy Rose violated Reese's right to be free from excessive force under the Fourth Amendment. "Therefore, the jury's verdict against [Rose] is sufficient to deny him qualified immunity on this prong of the analysis." *See A.D.*, 712 F.3d at 456 (denying qualified immunity on a post-verdict motion for judgment as a matter of law). Rose's entitlement to qualified immunity therefore turns on whether Reese's right was clearly established at the time of the incident in 2011.

Joining other circuit courts from around the country, this Court recently determined that the "clearly established" prong of the qualified immunity analysis is a matter of law to be decided by a judge. *Morales v. Fry*, 873 F.3d 817, 824–25 (9th Cir. 2017). In *Morales*, we recognized that "the question of whether a particular constitutional right is 'clearly established' is one that the Supreme Court has increasingly

emphasized is within the province of the judge." *Id.* at 822. "[C]omparing a given case with existing statutory or constitutional precedent is quintessentially a question of law for the judge, not the jury." *Id.* at 823. We recognized, however, that "[a] bifurcation of duties is unavoidable: only the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved." *Id.*

In arguing that his right to be free of excessive force under these circumstances was clearly established, Reese relies on the jury's answer to Question 14, their finding that it did not appear that Reese posed an immediate threat of death or serious physical injury to Rose at the time Rose fired his shot. Reese contends that by making this finding, the jury determined Rose violated Reese's clearly established right not to be subjected to deadly force when he posed no immediate threat to Rose or others. As *Morales* confirmed, however, the question of whether the right was clearly established is solely for the judge to decide, not the jury. *See id.* at 825. Thus, although the jury's finding that Reese posed no immediate threat of death or serious physical injury to Rose addresses the first prong of the qualified immunity analysis, it does not answer the purely legal question of whether the right was clearly established in this context. Therefore, the district court was within its authority to determine, as a matter of law, whether Deputy Rose was entitled to qualified immunity, even where a jury determined that he violated Reese's Fourth Amendment right to be free from excessive force.

Moreover, the district court appropriately analyzed the facts here to the established standard that "[a] Government official's conduct violates clearly established law when, at the

time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Thus, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting *al-Kidd*, 563 U.S. at 741). "As [the Supreme] Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson*, 483 U.S. at 640). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (second alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

We agree with the district court that Reese has not identified any sufficiently analogous cases showing that under similar circumstances, a clearly established Fourth Amendment right against the use of deadly force existed at the time of the shooting. The jury determined that when Reese answered the door to his apartment, he had a knife in his hand in an elevated position. Upon seeing Reese in the doorway with the knife, which was very close to where Rose was standing, Brown immediately fired a shot from his rifle at Reese, but missed. After Brown fired the shot, he saw Reese back into the apartment and drop the knife. Rose, who saw Reese when he first opened the door, lost sight of Reese

when he backed up into his apartment and after Brown fired at him. Rose then advanced toward the doorway and was surprised to see Reese standing in the apartment. Rose stated that he could not see Reese's hands but upon seeing him, shot Reese in the chest from three to five feet away. Notably, while the jury found that Reese did not brandish the knife at Rose, they also found that at the time Rose fired his shot, he did not see Reese's hands.

Although Reese goes to great lengths to remind this Court that we do not demand a case with "materially similar" factual circumstances or even facts closely analogous to his case, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), none of Reese's cited cases demonstrate that the contours of his Fourth Amendment right were sufficiently clear such that "any reasonable official in [his] shoes would have understood that he was violating it." *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration in original) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). Critically, Reese points to no case that considered the relevant question whether Deputy Rose, having come within striking distance of a suspect who had held a knife a fraction of a second before, was objectively unreasonable in using deadly force before determining whether the suspect still possessed the knife. *Compare Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (holding that officer's shooting of plaintiff did not violate a constitutional right where plaintiff had ignored officer commands and was accelerating towards officer on foot); *Smith v. City of Hemet*, 394 F.3d 689, 693, 702, 704 n.7 (9th Cir. 2005) (en banc) (declining to address qualified immunity, but concluding that a rational jury could find that officers' use of pepper spray and a police canine on a plaintiff was unconstitutionally excessive where the "[t]he record does not reveal any basis for believing that [plaintiff] was armed,"

where his wife had informed officers that plaintiff "did not have a gun, there were no weapons in the house, and he was clad in his pajamas"); *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998) (finding officer's shooting of plaintiff objectively unreasonable where the officer was "safely ensconced on [a] hill overlooking" the cabin that plaintiff was running toward and the plaintiff had made "[n]o threatening movement . . . with respect to [the shooting officer] or anyone else, even after [the officer] shot [plaintiff's friend]"); *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 323, 325 (9th Cir. 1991) (affirming district court's denial of officer's motion for summary judgment on qualified immunity grounds where the non-moving plaintiff's evidence showed that the plaintiff had not pointed his gun at officers, his gun was not loaded, and he was not facing the officer who opened fire).

Reese relies on additional cases that post-date March 2011, when the incident occurred, but those decisions "could not have given fair notice to [Deputy Rose] and are of no use in the clearly established inquiry." *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004). Even to the extent that those cases reflect clearly established case law that pre-dates March 2011, their factual contexts make clear that the law was not clearly established for the circumstances Deputy Rose confronted here. *See Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017) (holding excessive force was used if defendant officer fired a second round of close range bullets at a plaintiff who was curled up on the floor and injured from a first round of fire, and then subsequently stomped on the plaintiff's head); *Longoria v. Pinal County*, 873 F.3d 699, 708–09, 710 (9th Cir. 2017) (holding that officer's use of deadly force could have violated a clearly

established right if jury determined plaintiff who was surrounded by law enforcement and had not brandished a weapon during forty minutes of observation was in the process of surrendering at the time of the shooting, rather than assuming a shooting stance); *Estate of Lopez by and Through Lopez v. Gelhaus*, 871 F.3d 998, 1021–22 (9th Cir. 2017) (remanding for trial where the facts, viewed in the light most favorable to the non-moving plaintiff in response to defendants' motion for summary judgment on defense of qualified immunity, could show that the force used was unreasonable because the victim never raised the perceived weapon or made a "harrowing gesture" when he turned toward the officers).

Moreover, Reese's reliance on our decision in *Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016), only confirms that the law was not clearly established here. In *Hughes*, we reasoned that an officer's shooting of a plaintiff who was approaching a third party while holding a kitchen knife at her side violated the plaintiff's clearly established rights, where the facts viewed in the plaintiff's favor showed that she was not "angry or menacing," officers knew only that she has been using the knife to carve a tree, and the plaintiff did not understand orders to drop the weapon. *Id*. at 785. After Reese's appeal was argued, the Supreme Court summarily reversed our decision in *Hughes*, concluding that it was "far from an obvious case," and that none of our precedents squarely governed the facts involved. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Given that Rose had greater reason to perceive a threat here, and no luxury of time or distance to discern whether Reese still posed such a threat, the Supreme Court's decision in *Kisela v. Hughes* further illustrates that Rose is entitled to qualified immunity.

None of Reese's cases "squarely govern" the situation that Rose confronted such that they would have given Rose clear warning that his use of deadly force was objectively unreasonable. *Mullenix*, 136 S. Ct. at 310 (quotation marks omitted).[1]  Absent a showing by Reese that the right was clearly established at the time, Rose is entitled to qualified immunity on the Fourth Amendment excessive force claim. We therefore affirm the district court's ruling that Deputy Rose is entitled to qualified immunity on that claim.

## B.  Reese's Bane Act Claim

Reese also claims that the district court erred when it granted post-verdict summary judgment to Defendants on his claim under California Civil Code section 52.1, known as the Bane Act.  Reese asserts that the district court properly rejected the Defendants' proposed jury instruction on his Bane Act claim and therefore Defendants are not entitled to a new trial.  We disagree.

The Tom Bane Civil Rights Act, 1987 Cal. Stat. 4544, was enacted in 1987 to address hate crimes.  The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the

---

[1] We also agree with the district court that the jury's negative answer to Question 14 ("At the time Deputy Rose fired his shot, did it appear that Plaintiff posed an immediate threat of death or serious physical injury to Deputy Rose?") was unhelpful to the judge's legal question of whether any "reasonable" officer would have understood that the use of deadly force was at that time proscribed by clearly established Fourth Amendment excessive force law.  As the district court noted, the question does "not specify from whose perspective it did appear that Reese posed an immediate threat of death or serious physical injury to Rose."  (Doc. 216 at 11).

interference is carried out "by threats, intimidation or coercion." *See Venegas v. County of Los Angeles*, 63 Cal. Rptr. 3d 741, 742 (Cal. Ct. App. 2007). Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1).[2] Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. *See Venegas*, 63 Cal. Rptr. 3d at 753. Reese alleged a Bane Act violation based upon the same facts as his Fourth Amendment excessive force claim.

Before trial, Defendants moved for summary judgment, arguing that a Bane Act claim required a showing of threats, intimidation or coercion in addition to the elements required to establish a violation of the Fourth Amendment. The district judge who ruled on the motion (who was not the trial judge) denied the motion based on *Chaudhry*, which held that section 52.1 "does not require proof of discriminatory intent" and "that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." 751 F.3d at 1105.

Likewise, at the conclusion of trial, the district court rejected Defendants' proposed alternative California Civil

---

[2] *Chaudhry* relied on *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) for the proposition that "the elements of [an] excessive force claim under § 52.1 are the same as under § 1983." *Id.*

Jury Instruction [CACI] 3066[3] on the Bane Act.  In re-urging their position, Defendants argued that Reese's proposed instruction eviscerates the requirement in CACI 3066 that additional elements are necessary to prove a Bane Act claim because his instruction is "essentially amounting to a passthrough where there's a Fourth Amendment violation saying that if there's a Fourth Amendment violation, there's also a Bane Act violation."  The district court summarily explained that Defendants' argument had previously been rejected on summary judgment and "I'm going to reject it too."  Therefore, the district court instructed the jury as follows:  "If you determine that Plaintiff prevails on his Fourth Amendment excessive force claim against Defendant Brown and/or Defendant Rose, then Plaintiff also prevails on his Bane Act claim against that Defendant or Defendants."  The jury found for Reese and against Deputy Rose and the County on the Bane Act claim.

---

[3] The applicable 3066 instruction reads:

> [Plaintiff] claims that [defendant] intentionally interfered with [or attempted to interfere with] [his/her] civil rights by threats, intimidation, or coercion. To establish this claim, [plaintiff] must prove all of the following:
>
> > 1. That [defendant] acted violently against [plaintiff]/ [and][ plaintiff]'s property] [to prevent [him/her] from exercising [his/her] right [insert right]/to retaliate against [plaintiff] for having exercised [his/her] right [insert right]];]
> >
> > 2. That [plaintiff] was harmed; and
> >
> > 3. That [defendant]'s conduct was a substantial factor in causing [plaintiff]'s harm.

In their request for a new trial, Defendants claimed that the trial court erred when it declined to give their CACI 3066 instruction. In addition to reasserting the arguments made in their summary judgment motion, Defendants also attempted to distinguish *Chaudhry* from this case stating "contrary to Defendants in this case '[t]he City defendants [in *Chaudhry*] conceded in their brief . . . that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1.'" The Defendants bolstered their position with several district court cases that held that the Bane Act does not apply to an allegation of excessive force without a showing that the act was done to interfere with a separate state or federal constitutional right. Thus, Defendants asserted that *Chaudhry* "does not equate to a correct application of § 52.1" and a new trial with a CACI 3066 instruction was required.

Convinced by the Defendants' arguments, the district court changed its mind. The court concluded that the Defendants were correct in their argument that their proposed instruction should have been given. The court pronounced that because the evidentiary record is complete on the Bane Act claim, rather than granting a new trial, the court would issue an amended judgment in favor of Defendants on the Bane Act claim.

In explaining its ruling the district court stated that "California Appellate Court authority reveals: The Bane Act 'requires a showing of coercion independent from the coercion inherent in [constitutional violation] itself.'" The district court found that the evidence in this case did not, therefore, support this Bane Act element. The court relied on *Shoyoye v. County of Los Angeles*, which held that "where coercion is inherent in the constitutional violation alleged,

i.e., an overdetention in County jail, the [Bane Act] statutory requirement of 'threats, intimidation, or coercion' is not met" and that "[t]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself."  137 Cal. Rptr. 3d 839, 849 (Cal. Ct. App. 2012).

We find that the district court erred in granting summary judgment to the Defendants. We note that at the time that the district court issued its *sua sponte* summary judgment order, it observed that "no California Appellate Court decision addressed whether excessive force **alone** - 'the use of excessive force during an otherwise lawful arrest,' - is sufficient to sustain a Bane Act violation[.]" (Doc. 216 at 27). Thus, the district court relied on what it determined were persuasive decisions, including *Shoyoye*, that explain that more is required.  The district court's reliance on *Shoyoye* is misplaced, however.  First, *Shoyoye* is distinguishable from Reese's excessive force claim because it involved a claim of wrongful detention.  *Chaudhry*, upon which the prior court relied when it initially denied Defendants' summary judgment motion, is an excessive force case.  Moreover, *Chaudhry* was decided two years after *Shoyoye* and since the *Chaudhry* decision, district courts have largely interpreted it to mean that section 52.1 does not require a showing of "threats, intimidation and coercion" separate from an underlying constitutional violation.  *See, e.g.*, *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 990, 999 (C.D. Cal. 2014) (distinguishing *Shoyoye* by interpreting it to apply only when the constitutional violation is unintentional); *Boarman v. County of Sacramento*, 55 F. Supp. 3d 1271, 1287 (E.D. Cal. 2014) (applying *Chaudhry* and holding that the plaintiff's Bane Act claim based on excessive force survived summary judgment because the elements of such a claim

under section 52.1 are the same as under § 1983); *Barragan v. City of Eureka*, No. 15-cv-02070-WHO, 2016 WL 4549130, at \*8 (N.D. Cal. Sept. 1, 2016) (agreeing with *Chaudhry* that the elements of an excessive force claim under § 1983 establish the elements of a Bane Act claim and that no additional elements are required).

Although there are ample federal district court cases that interpret *Chaudhry* in a way that is contrary to the district court's decision here, to be sure, the district court is not bound by those decisions. However, where "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (emphasis omitted). Until recently, California's appellate court guidance had not squarely addressed whether in an excessive force case the Bane Act requires a separate showing of coercion beyond that inherent in the use of force. Reese's supplemental authority however, provides us with that guidance which we are now bound to apply.

In *Cornell v. City and County of San Francisco*, the California Court of Appeal recognized that Bane Act claims are routinely alleged in Section 1983 claims under federal pendent jurisdiction and that "[t]he Bane Act's requirement that interference with rights must be accomplished by threats[,] intimidation or coercion 'has been the source of much debate and confusion.'" 225 Cal. Rptr. 3d 356, 384 (Cal. Ct. App. 2017) (citations omitted). Thus, the court announced its endeavor to provide clarity. In so doing, the court examined *Shoyoye*'s conclusion that the section 52.1

claim required a showing of coercion independent of the coercion inherent in the wrongful detention at issue in that case. Concluding that *Shoyoye* was limited to cases involving mere negligence, the court in *Cornell* ruled that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Cornell*, 225 Cal. Rptr. 3d at 383. The court agreed "that the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1.'" *Id.* at 382.

*Cornell* also makes clear, however, that the Bane Act imposes an additional requirement beyond a finding of a constitutional violation. *Cornell* explained that "[p]roperly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Id.* at 383. Accordingly, *Cornell* held that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 384. In so holding, *Cornell* adopted the specific intent standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights.[4] 225 Cal. Rptr. 3d at 384–85.

---

[4] *Cornell* acknowledged that Section 52.1 is civil, while the federal laws to which *Screws* applies, 18 U.S.C. §§ 241 and 242, are criminal. 225 Cal. Rptr. 3d at 385. But given their structural similarities, *Cornell* concluded that, though "the burden of proof is fundamentally different in these two arenas . . . we see no reason why the applicable mens rea element ought to differ." *Id.*

Thus, based on the weight of this new state authority, and our obligation to consider the California Court of Appeal's thorough analysis of its own law, we draw two conclusions as to the necessary showing for an excessive force claim under the Bane Act. First, the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally independent from the constitutional violation alleged. *Cornell*, 225 Cal. Rptr. 3d at 382–83. Second, the Bane Act requires a "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 384.

We see no "convincing evidence that the state's supreme court likely would not follow" *Cornell* in reaching these two conclusions. *Ryman*, 505 F.3d at 994. As to the requirement of coercion independent from the constitutional violation, *Cornell* correctly notes that the plain language of Section 52.1 gives no indication that the "threat, intimidation, or coercion" must be independent from the constitutional violation. *See Cornell*, 225 Cal. Rptr. 3d at 383. Moreover, in the two California Supreme Court cases to apply Section 52.1 in the Fourth Amendment context, neither gave any indication of an independent coercion requirement. In *Venegas v. County of Los Angeles*, the California Supreme Court, in holding that a Section 52.1 plaintiff need not be a member of a protected class, found that plaintiffs had "adequately stated a cause of action under section 52.1" where they alleged warrantless, unconsented searches and unlawful detention. 87 P.3d 1, 3–4, 14 (Cal. 2004). In *Jones v. Kmart Corp.*, the court held that the plaintiff could not bring a Fourth Amendment excessive force claim against a private security guard because the lack of a state actor meant there was no constitutional violation, but did not suggest that some coercion independent

of the alleged excessive force was required.  949 P.2d 941, 942, 944 (Cal 2004).**[5]**

Similarly, the specific intent requirement articulated in *Cornell* is consistent with the language of Section 52.1, which requires interference with rights by "threat, intimidation or coercion," words which connote an element of intent.  This is also reflected in California's model jury instruction, CACI 3066, which characterizes a Bane Act claim as one by the plaintiff that the defendant "*intentionally interfered* with [or attempted to interfere with] [his/her] civil rights by threats, intimidation, or coercion." CACI 3066 (emphasis added); *see also Cornell*, 225 Cal. Rptr. 3d at 387 (approving use of CACI 3066 because it "properly focused the jury on intentional violation of Cornell's right to be free from unreasonable seizure").  As above, we observe that the Fourth Amendment claims asserted in *Venegas* and *Jones* are not inconsistent with *Cornell*'s approach.

Though we have previously stated that "the elements of the excessive force claim under § 52.1 are the same as under § 1983," *Chaudhry*, 751 F.3d at 1105 (quoting *Cameron*, 713 F.3d at 1022), we do not read those cases as contradicting the intent requirement articulated in *Cornell*.  In *Cameron*, we noted that the plaintiff "assert[ed] no California right different from the rights guaranteed under the Fourth Amendment," 713 F.3d at 1022, and so concluded that the

---

**[5]** To the extent that we previously followed *Shoyoye* in concluding that "a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search," *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015), we are now guided by *Cornell* to interpret *Shoyoye*'s holding as limited to cases involving mere negligence, *see Cornell*, 225 Cal. Rptr. 3d at 381–82.

elements of the excessive force claim were the same, citing our prior observation in *Reynolds v. County of San Diego* that "[s]ection 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Cameron*, 713 F.3d at 1022 (quoting *Reynolds*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997)). Thus, *Cameron* was concerned with the nature of the elements of the predicate constitutional violation asserted under § 1983 and the Bane Act, but did not address whether the Bane Act required some showing of intent in addition to showing the constitutional violation. *Chaudhry* had no occasion to address the issue either, as the defendants there conceded that the elements were the same. 751 F.3d at 1105.

Applying these principles here, we conclude that the district court's jury instructions were erroneous. The district court instructed the jury that if Reese prevailed on his Fourth Amendment claim, then he also prevailed on his Bane Act claim. But the jury did not consider Deputy Rose's intent in its finding that he violated Reese's Fourth Amendment rights. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he 'reasonableness' inquiry in an excessive force case is . . . whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). As we have explained in applying the *Screws* specific intent standard to an excessive force violation of 18 U.S.C. § 242,[6] "a mere

---

[6] In relevant part, 18 U.S.C. § 242 applies to "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to

intention to use force that the jury ultimately finds unreasonable—that is, general criminal intent—is insufficient." *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993). Rather, the jury must find that the defendants "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id.* But it is not necessary for the defendants to have been "thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.* Because the district court's Bane Act jury instruction did not require this inquiry into Deputy Rose's intent, it was incorrect. The district court's post-trial order correctly recognized that Defendants' proposed jury instruction, CACI 3066, should have been given, *see Cornell*, 225 Cal. Rptr. at 386–87.

In addition to giving an incorrect jury instruction, the district court erred when it issued its post-trial grant of summary judgment to Defendants on the Bane Act claim. The district court's decision was based on an erroneous conclusion that the Bane Act required coercion independent from the constitutional violation. Although there was no evidence of coercion *independent* from Deputy Rose's use of objectively unreasonable force, we cannot conclude from the record that, taking the evidence in the light most favorable to Reese, no reasonable jury could find that Deputy Rose had a specific intent to violate Reese's Fourth Amendment rights. *See Nozzi v. Housing Auth. of City of L.A.*, 806 F.3d 1178,

---

the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. . . ."

1199–200 (9th Cir. 2015). The decision is therefore reversed and Reese's Bane Act claim is remanded for a new trial.[7]

## II. Defendants' Cross-Appeals

### A. *Heck v. Humphrey*, 512 U.S. 477 (1994) does not bar Reese's claims.

Prior to trial, Reese entered a "no contest" plea to a misdemeanor charge that he violated California Penal Code § 417(a)(1) for drawing or exhibiting a deadly weapon, other than a firearm, "in a rude, angry, or threatening manner," thus disposing of his original charge of Assault with a Deadly Weapon.[8] Under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), "[w]hen a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Hooper v. County of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) (quoting *Heck*, 512 U.S. at 487). If it would, the civil action is barred. *Id.*; *see also Yount v. City of Sacramento*, 183 P.3d 471, 484 (Cal 2008) (extending *Heck* to California state law claims). Defendants argue that Reese's misdemeanor conviction bars his claims

---

[7] The jury also found the deputy and County liable for battery under state law, and the damages award was therefore unaffected by the district court's decision to grant summary judgment on the Bane Act claim, other than a reduction of $21,175.00 for past medical expenses that had already been paid on Reese's behalf under the County Indigent Program. Because we do not reinstate the jury verdict on Reese's Bane Act claim, we do not reconsider the district court's denial of his motion for attorney's fees and costs.

[8] California Penal Code § 245(c).

because the claims necessarily imply the invalidity of his conviction.

Reese counters that Defendants did not produce evidence at trial to show the factual basis for Reese's no contest plea. Defendants rely upon Reese's trial testimony, which they characterize as stating that he "displayed/brandished the knife when he opened the door, but denied it was angry or threatening, and could not say whether the manner of display was 'not polite.'" Reese points out, however, that there are other instances of conduct that could have formed the factual basis for his misdemeanor conviction including evidence that he exhibited a knife to Brittany Shurtleff in an angry or threatening manner before the Deputies arrived. The district court found that even if Reese's misdemeanor conviction was based on a finding of "rudeness," his trial testimony did not invalidate that conviction finding.[9] In addition, the district court found that Defendants failed to show that the victim or victims of the conviction were any of the officers involved in Reese's action.

We agree. Defendants have not demonstrated that Reese's claims in this action are barred by *Heck*. Defendants have identified nothing in the record that shows the specific factual basis for Reese's misdemeanor conviction. Without such information, this Court cannot determine that Reese's claim of excessive force in this case would call into question the validity of his misdemeanor weapon conviction. *See Smith*, 394 F.3d at 698–99. The district court's ruling is affirmed.

---

[9] Contrary to Defendants' assertions, that Reese denied raising the knife to Shurtleff in his civil trial testimony does not necessarily mean that this was not the basis for his criminal conviction.

**B. The jury's award of $150,000.00 for future non-economic loss was supported by substantial evidence.**

Defendants challenge the district court's ruling that upheld the jury's award of $150,000.00 to Reese for future non-economic loss. They contend there was no evidence at trial of future non-economic losses. They argue that "[a]t most, the jury was shown a visible physical scar, but there was no testimony that future care was needed, no testimony that the scar caused any sort of anxiety, mental disturbance or other non-economic loss."

The district court cited two district court cases and a California Supreme Court case in determining that "[a]wards for non-economic damages, which included pain and suffering, can be supported by a finding of permanent scarring." The district court then found that "[i]n light of Reese's scarring, an inference can reasonably be drawn that he will continue to endure suffering" and that Defendants failed to show this portion of the judgment should be amended.

"A jury's verdict, including a damages award, must be upheld if supported by 'substantial evidence.'" *Freitag v. Ayers*, 468 F.3d 528, 537 (9th Cir. 2006), *cert. denied*, 549 U.S. 1323 (2007). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Substantial deference is afforded to a jury's finding of the appropriate amount of damages. *United States v. CB & I Constructors, Inc.*, 685 F.3d 827, 839 (9th Cir. 2012).

Reese showed the jury multiple scars on his body that resulted from the surgeries he underwent after being shot. Even if the only evidence in support of Reese's non-economic damages was his multiple scars and any inferences drawn therefrom, Defendants have not demonstrated it was error for the district court to conclude that was sufficient to uphold the amount awarded for non-economic damages. The district court's decision on this issue is affirmed.

**C. Any error in the jury instruction on Reese's Fourth Amendment claim that authorized liability if "Defendant shot at and/or shot the plaintiff" was harmless.**

Defendants next contend the district court, over their objection, gave an erroneous jury instruction providing that a Fourth Amendment violation could be shown by proving that one of the Defendants "shot at and/or shot the plaintiff," among other elements. Defendants argue "[t]his constituted prejudicial error by skewing the burden of proof at trial." Defendants argue that merely shooting at someone is insufficient to constitute a seizure.

The Court need not decide whether the instruction was erroneous because any error was rendered harmless by the jury's verdict. In their answers to the special interrogatories, the jury found that the round fired from Deputy Brown's rifle did not hit Reese but the round fired by Deputy Rose did. Correspondingly, the jury found a Fourth Amendment violation by Deputy Rose but not Deputy Brown. Thus, to the extent Deputy Brown could have been found liable under the Fourth Amendment for merely shooting at Reese rather than shooting and hitting him, the jury's findings prevented any harm from the potentially erroneous instruction. Thus, even

if the district court erred in giving that instruction, the error was harmless.

**D.  The district court did not abuse its discretion when it failed to exclude certain testimony by Reese's expert, and certain testimony by Defendants' expert elicited on cross-examination.**

Defendants next argue the district court abused its discretion by failing to exclude testimony by Reese's expert that a particular set of circumstances represented a "don't shoot scenario."  The district court overruled Defendants' objection at trial that the question presented an incomplete hypothetical and invaded the province of the jury.  Citing no legal authority, Defendants argue the evidence should have been excluded.

"We review the district court's evidentiary decisions for abuse of discretion, and the appellant is . . . required to establish that the error was prejudicial."  *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1032 (9th Cir. 2014) (alteration in original) (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1110 (9th Cir. 2011)).

As to the argument that the hypothetical was incomplete in that it referred to Reese being unarmed after he backed up into the apartment, the jury was not required to accept the described scenario as true and, in fact, made a finding that Deputy Rose did not see Reese's hands when he shot him. As to the argument that the expert's answer invaded the province of the jury in that it addressed the ultimate issue, Defendants have not shown prejudicial error. As a general rule, "[a]n opinion is not objectionable just because it embraces an

ultimate issue." Fed. R. Evid. 704(a). The district court's ruling on this issue is therefore affirmed.

Defendants also challenge the district judge's failure to sustain objections to questions asked of Defendants' expert by Reese's counsel. The questions addressed scenarios pertaining to whether Deputy Rose saw Reese's hands when he shot him. Again, given the jury's finding on this issue, Defendants have failed to show prejudicial error, as the district court determined. The district court's ruling is affirmed.

### E. The district court did not err in excluding the deposition testimony of a defense witness who did not appear in court to testify.

Next, Defendants argue the district court erred in excluding from the trial deposition testimony of Brittany Shurtleff, a witness who Defendants claim was "unavailable" under the Federal Rules of Evidence. Defendants contend they successfully served a subpoena on the witness and made reasonable, good faith efforts to procure her presence.

The district court determined that defense counsel, despite being aware the witness did not intend to appear in court, failed to make additional reasonable efforts in the time leading up to trial to ensure the witness's appearance in court. The district court therefore concluded there was no basis "to justify finding her unavailable under Federal Rule of Evidence 804(a)(5)."

Likewise, Defendants here simply assert that counsel made reasonable, good faith efforts to procure the witness's presence but they fail to explain what those efforts were.

Absent any evidence of actual reasonable, good faith efforts to ensure the witness's appearance, Defendants have not demonstrated that the district court abused its discretion. The district court's ruling is therefore affirmed.

**AFFIRMED IN PART, and REVERSED AND REMANDED IN PART.  Each party shall pay its own costs on appeal.**