**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANGELICA R. UNTALAN, | No. 22-55077 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-07599-ODW-JEM |
| v. | |
| WARREN A. STANLEY; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted December 7, 2022
Pasadena, California

Before: BEA, IKUTA, and CHRISTEN, Circuit Judges.
Partial Dissent by Judge IKUTA.

Plaintiff Angelica Untalan appeals the district court's order granting

summary judgment for Defendants: California Highway Patrol (CHP) Officer

Paola Trinidad, Lieutenants Jonathan Cochran and Joseph Zagorski, Captain Tariq

Johnson, former Commissioner Joseph Farrow, and then-current Commissioner

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Warren A. Stanley. Untalan sued Defendants for an unlawful seizure under 42 U.S.C. § 1983 and California's Bane Act after Trinidad ordered a thirty-day impoundment of Untalan's vehicle per California Vehicle Code section 14602.6(a) and other CHP personnel refused to grant Untalan an unconditional release of her vehicle. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, vacate in part, and remand. Because the parties are familiar with the facts of this case, we do not recite them here.

We review de novo a district court's order granting summary judgment, *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021), and we may affirm on any ground supported by the record, *M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 857 (9th Cir. 2020). Summary judgment is proper when the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1. Untalan argues the district court erred in setting aside her testimony regarding the events of May 14 as "uncorroborated and self-serving." We agree. Untalan testified that on May 14, she sought the release of her vehicle at her local CHP office, offered to pay the accrued storage fees, and was accompanied by a

licensed friend who could drive the vehicle. According to Untalan, the CHP officer with whom she spoke maintained that the vehicle could not be released because it was "on hold for 30 days." To set aside Untalan's testimony, the district court relied on *Villiarimo v. Aloha Island Air, Inc.*, which observed in passing that "this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). The two cases *Villiarimo* cited for this proposition involved circumstances in which a plaintiff attempted to raise a genuine dispute of fact based only on her own uncorroborated testimony when that testimony was contradicted by credible evidence in the record. *See Kennedy*, 90 F.3d at 1481 (finding "no *genuine* dispute of the fact that [plaintiff] was totally disabled from performing her job" because her contrary testimony was "uncorroborated and self-serving" and "flatly contradict[ed] [by] both her prior sworn statements and the medical evidence"); *Johnson v. Wash. Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) (observing that a court considering a summary judgment motion may "lawfully put aside testimony . . . when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other

3

persuasive evidence that the plaintiff has deliberately committed perjury"), *abrogated on other grounds by Robinson v. District of Columbia*, 580 A.2d 1255, 1258 (D.C. 1990). Here, because nothing in the record contradicted Untalan's account of the May 14 incident, the district court should have credited her testimony. *See Anderson*, 477 U.S. at 255.

Nevertheless, to the extent Untalan's § 1983 claim relies on the May 14 incident, summary judgment was appropriate for a different reason: Untalan failed to name the unidentified May 14 CHP officer as a defendant. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–66, 71 (1989). Untalan included "Does 1 through 10" as defendants in her First Amended Complaint, but she was unable to ascertain the identity of the May 14 officer as the case progressed, and she did not request that the district court defer consideration of Defendants' motion for summary judgment to allow her time to conduct additional discovery. *See* Fed. R. Civ. P. 56(d). Untalan suggests Trinidad is also liable for the May 14 incident considering Trinidad chose to impound the vehicle under section 14602.6(a) of the California Vehicle Code rather than under section 22651(p) because section 22651(p) would have allowed for an immediate release upon proof of ownership, payment of fees, and availability of a licensed driver to take possession of the car. *See* Cal. Veh. Code § 22651(p). But Trinidad could not have reasonably foreseen

4

that her choice of impoundment statute would result in another CHP officer refusing to release Untalan's vehicle even though Untalan had a licensed friend willing to take possession of it. *See Mendez v. County of Los Angeles*, 897 F.3d 1067, 1076 (9th Cir. 2018) ("[T]he touchstone of proximate cause in a § 1983 action is foreseeability." (quoting *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007)). We therefore affirm the district court's order granting summary judgment as to Untalan's § 1983 claim arising from the events of May 14.

2. Untalan also argues the district court improperly concluded that Cochran, Zagorski, and Johnson were entitled to qualified immunity for their conduct at the May 23 storage hearing. Those three defendants refused to grant Untalan an unconditional release of her vehicle but instead offered her a conditional release agreement. The agreement provided that Untalan's attorney could take possession of the vehicle if she promised to ensure that Untalan "[would] not have access to [the] vehicle during the remainder of the 30-day impoundment period" and that Untalan "[would] not be given, rented, or provided [the] vehicle or any other vehicle to drive."

Untalan argues that our decisions in *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), and *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018),

establish that the conditional release agreement was unconstitutional.[1] We agree.

Those cases held that impoundment under California Vehicle Code section

14602.6 constitutes a warrantless seizure and thus "is justified under the Fourth

Amendment only to the extent that the government's justification [for the seizure]

holds force." *Brewster*, 859 F.3d at 1197; *see Sandoval*, 912 F.3d at 516–17. In

both cases, we concluded that the government's community-caretaking

justification for impounding a vehicle no longer held force once a licensed driver

was available to take possession of the car. *Brewster*, 859 F.3d at 1197; *Sandoval*,

912 F.3d at 516–17. In *Sandoval*, the government argued that its continued

possession of the seized vehicle was valid because the plaintiff could not legally

drive, but we explained that the seizure still violated the Fourth Amendment

because it interfered with the plaintiff's *other* possessory interests. *Sandoval*, 912

F.3d at 516–17. Here, the broad language of the conditional release agreement

encroached on Untalan's possessory interests more than was necessary to prevent

unlicensed driving pursuant to the officers' community-caretaking authority. By

---

[1] Untalan raises an alternate argument for the first time on appeal that Cochran, Zagorski, and Johnson violated her constitutional rights at the May 23 hearing by failing to reduce her fees to the amount she owed by May 14. Untalan did not make this argument before the district court, and the record does not reflect that she actually requested a reduction of the accrued fees to the amount owed on May 14. We therefore do not reach this argument.

requiring that Untalan's counsel ensure she did not "have *access* to [the car]" for thirty days, even though a licensed driver was available to take possession, the conditional release agreement prevented Untalan from exercising her valid possessory interests unrelated to driving—for example, she would be barred from accessing the car to store her possessions in it or to perform maintenance on it.

In light of *Brewster* and *Sandoval*, no reasonable officer could have concluded that requiring that Untalan be denied *all access* to her car for 30 days was a permissible exercise of the police's community-caretaking function. We therefore reverse the district court's decision to grant summary judgment for Cochran, Zagorski, and Johnson on Untalan's § 1983 claim on the basis of qualified immunity.

3. We vacate the district court's order granting summary judgment for Cochran, Zagorski, and Stanley on Untalan's Bane Act claim. To support a Bane Act claim for a Fourth Amendment violation, Untalan needed to prove those defendants acted with the "specific intent to violate [her] right to freedom from unreasonable seizure." *Sandoval*, 912 F.3d at 519–20 (quoting *Reese v. County of Sacramento*, 888 F.3d 1030, 1043, 1044 n.5 (9th Cir. 2018)). "The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,'

7

and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Id.* at 520 (quoting *Cornell v. City & County of San Francisco*, 225 Cal. Rptr. 3d 356, 386 (Ct. App. 2017)). The district court concluded that Cochran, Zagorski, and Stanley lacked the specific intent required for a Bane Act violation based on prong one of this inquiry because their actions "did not violate any clearly established constitutional right." Because we conclude the unlawfulness of the conditional release was clearly established, we remand for the district court to consider prong two of the specific intent inquiry.

**AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.** Costs are awarded to Untalan.

*Untalan v. Stanley*, No. 22-55077

IKUTA, Circuit Judge, dissenting in part:

Pointing to cases holding only that the government must release an impounded vehicle "once a licensed driver was available to take possession of the car," Maj. at 6, the majority opines that "no reasonable officer could have concluded" that it was permissible to take this exact step—releasing an impounded vehicle to a licensed driver—because the release was on condition that the *unlicensed* owner not drive it. Maj. at 7. This conclusion conflicts with the Supreme Court's direction to "the Ninth Circuit in particular" that we should not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (cleaned up). Rather, "[s]pecificity is especially important in the Fourth Amendment context," because "the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine" applies to the specific "factual situation the officer confronts." *Id.* (cleaned up). Because the majority's qualified immunity analysis ignores the specific factual situation in this case, I dissent.

Qualified immunity shields police officers from liability "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11

1

(2015) (per curiam) (citations and internal quotations omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). To meet this standard, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

In this case, Untalan and her attorney appeared for a vehicle storage hearing conducted by Lieutenants Cochran and Zagorski on May 23, 2019. The officers agreed to release the vehicle to Untalan's attorney, a licensed driver, if she signed a conditional release agreement. The agreement stated that the attorney would ensure that Untalan would "not have access to [the car] during the remainder of the 30-day impoundment period," and would "not be given, rented, or provided [the car] or any other vehicle to drive, until [she] is properly licensed."

The majority holds that the officers violated the clearly established rule that a conditional release of a vehicle is unconstitutional because it "encroache[s] on [the car owner's] possessory interests more than [is] necessary to prevent unlicensed driving pursuant to the community caretaking exception." Maj. at 6. But existing precedent has certainly not put this rule "beyond debate." *Ashcroft*, 563 U.S. at 741. There is no case clearly establishing that police officers violate

2

constitutional rights if they release an unlicensed driver's vehicle subject to the condition that the driver not be allowed to drive the car. In *Brewster v. Beck* (on which the majority relies), we held only that officers could not continue to impound a vehicle under the community caretaking exception to the Fourth Amendment once the owner "showed up with proof of ownership *and a valid driver's license.*" 859 F.3d 1194, 1196 (9th Cir. 2017) (emphasis added). This conclusion is inapplicable here, because Untalan did not show up with a valid driver's license at the time of the storage hearing. Therefore, a reasonable police officer could believe that the state still had a legitimate "interest in keeping unlicensed drivers off the road." *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 516 (2018).

The majority's reliance on *Sandoval* is even more misplaced. In that case, we held that the state had no justification to continue to impound a vehicle once the owner showed up with "a licensed driver who could take possession of the truck." *Id.* The officers here fully complied with this requirement by agreeing to release the vehicle to Untalan's attorney. *Sandoval* did not address the question whether a conditional release of a vehicle to an unlicensed plaintiff can be justified by the community caretaking function, *see id.*, so this opinion can scarcely be said to "'squarely govern[]' the specific facts at issue" here, *Kisela*, 138 S. Ct. at 1153

(citation omitted).

Because *Brewster* and *Sandoval* are not on point, the majority erroneously states that, "[i]n light of" these cases, "no reasonable officer could have concluded that requiring that Untalan be denied *all access* to her car for 30 days was a permissible exercise of the police's community-caretaking function." Maj. at 7. Neither *Brewster* nor *Sandoval* went that far. Rather, they explained that a police officer is required to release a vehicle from impoundment when a licensed driver shows up, and Officers Cochran and Zagorski complied with this requirement by agreeing to release the vehicle at issue to the licensed driver. The release agreement's requirement that the attorney not give Untalan access to the car or give her the car to drive "until she was properly licensed," read in context, makes it clear that the agreement was intended to prevent unlicensed drivers from accessing their cars for the purposes of driving them, not to "prevent[] Untalan from exercising her valid possessory interests unrelated to driving," like "accessing the car to store her possessions in it or to perform maintenance on it." Maj. at 7.

It is clear that neither *Brewster* nor *Sandoval* provides the "require[d] . . . high 'degree of specificity'" that would let reasonable officers know that they had no right to condition release of a vehicle on keeping it away from an unlicensed driver. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590

4

(2018) (citation omitted). Although the majority thinks these cases (when read together) provide a general rule that should have guided the officers' actions, Maj. at 7, the Supreme Court has told us that the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established'" based on "the specific context of the case." *Mullenix*, 577 U.S. at 12 (citation omitted).

Because the majority's "clearly established" rule is neither clear nor established, the officers here are entitled to qualified immunity for their conduct at the May 23 storage hearing. In holding otherwise, the majority ignores the Supreme Court's direction in applying qualified immunity jurisprudence. Therefore, I dissent.