Filed 11/19/20  Sherman v. Bryant CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT SHERMAN, | |
| Plaintiff and Appellant, | E072201 |
| v. | (Super.Ct.No. PSC1502474) |
| ROBERT BRYANT et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  James T. Latting, Judge.
Affirmed in part and reversed in part.

Law Offices of Marvin H. Weiss and Marvin H. Weiss for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and James C. Packer; Arias & Lockwood and
Christopher D. Lockwood and John M. Porter for Defendants and Respondents.

There was substantial evidence of the following facts.

Officers of the Riverside County (County) Sheriff's Department arrested Robert
Sherman for allegedly brandishing a firearm.  One officer made him sit in a patrol car, in
the sun, on a hot day.  As a result, Sherman suffered second degree burns, blisters,

1

dehydration, and heat exhaustion. After he had been in the car about 45 minutes, a second officer gave him some water; however, that officer shoved the water bottle into Sherman's mouth, causing him to choke, cough, and gag. The second officer then put Sherman back into the hot car, where he remained for another 15 minutes.

Before Sherman was booked, a nurse found that he had dangerously high blood pressure. A third officer therefore took him to a hospital. That officer told Sherman that he might have to wait four hours or more to be seen; however, if he refused treatment, he could be released early. Accordingly, Sherman — who was still weak, confused, and disoriented — refused treatment. Sherman was released less than an hour later.

Sherman then filed this action against the three officers and against the County, asserting causes of action for federal civil rights violations, state civil rights violations, assault and battery, intentional infliction of emotional distress, negligence, and negligent hiring, training, and supervision.

The trial court sustained a demurrer by the first officer (who had made Sherman sit in the hot car) and entered judgment in his favor. Sherman did not appeal from that judgment.

The trial court then granted the other defendants' motion for summary adjudication on all causes of action, except for two causes of action, solely as against the County. Sherman dismissed the remaining causes of action to facilitate this appeal.

Sherman now contends that the trial court erred by granting summary adjudication on almost every cause of action, as against almost every moving defendant. As to some

2

causes of action, against some defendants, we agree; as to others, we disagree. Hence, we will affirm in part and reverse in part.

A table showing our disposition of each cause of action as against each defendant is attached to the unpublished portion of this opinion as Attachment A.

I

STATEMENT OF FACTS[1]

As of August 18, 2014, Sherman was 74 years old. He wore a MedicAlert bracelet, which indicated that he had previously had a stroke.

Sherman owned and managed residential real property. On August 18, 2014 he went to one of his rental properties, in Desert Hot Springs; he had given the tenant, who had been lawfully evicted, just one hour to remove her property. While waiting, he sat in his car, in the shade of a tree.

When the hour was up, the tenant and her friends refused to leave. Three or four men approached Sherman and said, "We're going to get you, you mother fucker." Sherman was carrying a gun, for which he had a concealed carry permit. In self-defense, he drew the gun and waved it back and forth. Someone in the tenant group called the police and reported a man with a gun.

---

[1] Defendants filed objections to Sherman's evidence. The trial court did not rule on these objections; rather, it ruled that none of them were material to its disposition of the motion. Defendants do not claim this was error. Accordingly, we consider all of the evidence submitted. (See Code Civ. Proc., § 437c, subd. (c).)

3

Officer Armando Munoz responded to the call. Sherman "offered no resistance, and was fully compliant with all requests posed by the officer."

Officer Munoz arrested and handcuffed Sherman. He did not look at Sherman's MedicAlert bracelet. He ordered Sherman to get into his patrol car, then put a hand on his shoulder and pushed him in.

It was about noon, in August, in the desert. The patrol car windows were up and the air conditioning was off. The outside temperature was about 100 degrees. The temperature inside the patrol car was approximately 140 degrees. As a result, Sherman suffered "second degree burns, dehydration, blisters on his upper torso and arms, swollen hands, spiked blood pressure, weakness and near complete inability to speak, and other injuries attendant [upon] severe heat exhaustion."

Sherman asked repeatedly for water; he even "scream[ed], 'I need water.'" After he had been in the patrol car for about 45 minutes, Officer Brian Taylor opened the car door. He could see that Sherman had "symptoms of heat exhaustion, including heavy sweating, . . . weakness, impaired breathing, and impaired speech."

Sherman was handcuffed. He tipped his head upward, and Officer Taylor "shoved a bottle of water down [his] mouth." Sherman admitted that he "consent[ed] to having the water bottle put in [his] mouth[.]" He drank some water, but "seconds" after the bottle was placed in his mouth, he choked, coughed, gagged, and struggled to breathe. Sherman did not recall when Officer Taylor stopped pouring the water.

4

Officer Taylor commented, "You can kiss your current permit goodbye." He then locked Sherman in the patrol car again, for about another 15 minutes. As he was walking away, Sherman said, "I don't feel well," but he did not know whether Officer Taylor heard him. Officer Taylor, too, never looked at Sherman's MedicAlert bracelet.

Officer Munoz transported Sherman to the Palm Desert police substation. During the trip, Sherman said he did not feel well. He tried to show Officer Munoz his MedicAlert bracelet, but Officer Munoz did not look at it. Officer Ronald Bryant[2] then transported Sherman from the Palm Desert police station to the Indio jail.

At the jail, a nurse determined that Sherman had dangerously high blood pressure. He told her about his previous stroke. She had Officer Bryant transport him to a hospital emergency room to get a medical clearance before booking.

On the way there, Officer Bryant told Sherman that he might be at the hospital for four hours or more, but if he refused treatment, he could be released early. He added, "If you refuse service, . . . we can just get in and out . . . ."

At about 3:00 p.m., they arrived at the hospital. As they were walking in, Officer Bryant said, "Remember what I said about the four hours or longer?"

At the time, due to heat exhaustion, Sherman was weak, confused, and disoriented. He testified that he "reasonably understood [Officer Bryant's] admonitions to be directives." Thus, he said, "Okay, . . . I'll refuse the service." He signed a written

---

[2]      Officer Bryant was an unsworn Community Services Officer.

acknowledgement that he was leaving against medical advice. Officer Bryant then transported him back to the jail.

The same nurse examined Sherman again and found that he still had "dangerously high" blood pressure. The supervising officer at the jail told Officer Bryant to transport Sherman back to the Palm Desert station, cite him, and release him. Thus, at 4:00 p.m., Sherman was released. After his release, he did not seek any medical care.

Sherman was charged with brandishing a firearm. (Pen. Code, § 417, subd. (a)(2).) He pleaded guilty to the lesser offense of disturbing the peace (Pen. Code § 415, subd. (2)) and was placed on probation.

Sherman made a formal complaint to the County, but it never disciplined Officers Munoz, Taylor, or Bryant for their conduct during this episode.

II

STATEMENT OF THE CASE

Sherman filed this action in 2015. The defendants, as named in the second amended complaint, included the County, Officer Munoz, Officer Taylor, and Officer Bryant. However, Officer Munoz's demurrer to the second amended complaint was sustained, without leave to amend, and the trial court entered judgment in his favor.[3] Sherman did not appeal.

Sherman then filed the third amended complaint, which asserted causes of action for violation of civil rights under federal (42 U.S.C. § 1983 [section 1983]) and state law

---

[3] That demurrer, ruling, and judgment are not in the record.

(Civ. Code, § 52.1); assault and battery; intentional infliction of emotional distress; negligence; and, solely against the County, for negligent hiring, training, and supervision.

Defendants moved for summary judgment or summary adjudication. The trial court denied the motion with respect to two causes of action against the County — for negligence, and for intentional infliction of emotional distress. Otherwise, it granted the motion. Sherman voluntarily dismissed his remaining claims, without prejudice. Accordingly, the trial court entered judgment against Sherman and in favor of defendants.

III

STANDARD OF REVIEW

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.]" (*Regen ts of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.)

A moving defendant has the "burden" to "show[] that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a

7

triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Ibid.*)

"Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party. [Citations.]" (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864.)

"Whether the trial court erred by granting [the] motion for summary judgment is a question of law we review de novo. [Citation.]" (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)

While Sherman asserts six causes of action, they are all based on one or more of the following three acts or incidents:

1. Officer Munoz (and, to some extent, Officer Taylor) confining Sherman in the hot patrol car;

2. Officer Taylor shoving the water bottle into Sherman's mouth; and

3. Officer Bryant inducing Sherman to refuse medical care at the hospital (and, to some extent, Officer Taylor denying Sherman medical care in the field).[4]

---

[4]  The complaint is also based on a fourth act: failing to cite and release Sherman immediately, at the scene, and thus unduly prolonging his detention.

Defendants showed, however, that the County's policies and procedures prohibit citing and releasing an arrestee at the scene when a gun is involved; rather, the arrestee must be booked, "to create a distance between the aggressor and the victim."

In his opening brief, Sherman never argues that he stated any cause of action based on this particular act. We deem him to have forfeited any such contention.

We find it most convenient to consider each of these acts under its own heading, with the relevant causes of action as subheadings, rather than the other way around.

We also consider, separately, the County's liability on the federal civil rights cause of action.

But first, we consider defendants' contentions that apply globally to all causes of action.

IV

THE EFFECT OF THE JUDGMENT IN FAVOR OF OFFICER MUNOZ

Defendants contend that, by failing to appeal the judgment in favor of Officer Munoz, Sherman "waived" all of his claims against the County that are based on Officer Munoz's conduct, other than his federal civil rights claim.

Defendants cite no authority supporting this contention.[5] We could reject it for that reason alone. (*People ex rel. Alzayat v. Hebb* (2017) 18 Cal.App.5th 801, 821, fn. 10.)

In addition, defendants did not move for summary adjudication on this ground. Thus, Sherman had no opportunity to respond to it or to introduce evidence regarding it. "As a general rule, a new theory may not be presented for the first time on appeal unless it raises only a question of law and can be decided based on undisputed facts. [Citations.]" (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983.)

---

[5] They do cite one case for the proposition that a voluntary dismissal is not appealable, but that proposition is not particularly relevant.

We acknowledge "the firmly established rule that a judgment on the merits favorable to an employee in an action by a third person for a tort of the employee is a bar to an action by the third person against the employer where the latter's asserted liability for the tort rests upon *respondeat superior* and not his independent tort. [Citations.]" (*Freeman v. Churchill* (1947) 30 Cal.2d 453, 461.) Moreover, this rule applies in an action against a public entity based on its *statutory* vicarious liability (Gov. Code, § 815.2, subd. (a)). (See *Perez v. City of Huntington Park* (1992) 7 Cal.App.4th 817, 820.) The rule applies, however, only "where the liability is predicated upon *respondeat superior* and the defense raised by the employee . . . *is not personal to him but goes to the merits of the case* . . . . [Citations.]" (*Freeman v. Churchill*, *supra*, 30 Cal.2d at p. 461, italics added; see, e.g., *Campbell v. Harris-Seybold Press Co.* (1977) 73 Cal.App.3d 786, 791.)

Here, precisely because defendants did not raise their present contention below, the trial court's attention was never drawn to the demurrer that resulted in the dismissal of Officer Munoz. Moreover, as mentioned (see fn. 3, *ante*), that demurrer has not been included in the appellate record. Therefore, the record does *not* show that the judgment in favor of Officer Munoz was *not* based on a defense personal to him. We cannot tell whether the demurrer applied solely to Officer Munoz, or whether, on the other hand, it would apply equally to the County. Thus, we cannot say as a matter of law that the judgment in favor of Officer Munoz bars any cause of action against the County.

Under this general heading, defendants also refer briefly to Sherman's voluntary dismissal of his intentional infliction of emotional distress and negligence causes of action, as against the County. However, that dismissal was without prejudice. Hence, it has no effect on any of the other causes of action or any of the other defendants.

V

THE *HECK* BAR

Defendants contend that all of Sherman's claims are barred because he was convicted of a crime.

*Heck v. Humphrey* (1994) 512 U.S. 477 held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, [citation]. A claim for damages bearing that relationship to a conviction or sentence that has *not* been *so* invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, *the* [*trial*] *court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence*; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [trial] court determines that the plaintiff's action, even if successful, will *not* demonstrate

11

the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." (*Id*. at pp. 486-487, italics original and added, fns. omitted.)

Here, Sherman does not challenge his conviction or sentence for disturbing the peace; he challenges only his treatment during his otherwise lawful detention. A judgment in his favor would not "necessarily imply the invalidity of his conviction or sentence." In any event, *Heck* would apply only to Sherman's federal and state civil rights claims; it is irrelevant to his other claims. Accordingly, *Heck* does not bar this action.

## VI

## THE FEDERAL CIVIL RIGHTS CAUSE OF ACTION AGAINST THE COUNTY

The trial court ruled that, even if Officer Munoz violated Sherman's federal constitutional rights, the County could not be held liable under section 1983, because Officer Munoz was not acting pursuant to a policy or custom of the County. The same reasoning would apply equally to the County's liability under section 1983 based on the acts of the other two officers.

Under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, "a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (*Id*. at p. 691.) The municipality can be held liable if, and only if, the tortfeasor was acting pursuant to an ordinance, regulation, policy, decision, custom of the

municipality.  (*Id*. at pp. 690-692, 694.)  A "custom," for this purpose, is a "'practice[]'" that is "'permanent and well settled.'"  (*Id*. at p. 691; accord, *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1302.)

The County showed that its policies do not permit or condone violations of constitutional rights.  Specifically, it is the policy of the Sheriff's Department not to use unconstitutionally excessive force.  Officers receive periodic training on the constitutional limits on the use of force.  All complaints of misconduct are thoroughly investigated, and if the complaint is substantiated, corrective action is taken, which may include counseling, further training, discipline, and referral for criminal prosecution.

Sherman contends that the fact that none of the officers were disciplined as a result of their treatment of him is evidence of a policy or custom.  However a mere failure to discipline, after a single incident, is insufficient to show a policy or custom on a theory of ratification.  (*Quinn v. Guerrero* (5th Cir. 2017) 863 F.3d 353, 365, cert. den. (2018) ___ U.S. ___ [138 S.Ct. 682]; *Sheehan v. City and County of San Francisco* (9th Cir. 2014) 743 F.3d 1211, 1231, revd. in part on other grounds, cert. dismissed in part sub nom.; *City and County of San Francisco, Calif. v. Sheehan* (2015) 575 U.S. 600; *Santiago v. Fenton* (1st Cir. 1989) 891 F.2d 373, 382; *Monfils v. Taylor* (7th Cir. 1998) 165 F.3d 511, 517, cert. den. sub nom. *Taylor v. Monfils* (1999) 528 U.S. 810.)  "A theory of ratification is limited to 'extreme factual situations.'  [Citation.]  '[I]t is nearly impossible to impute lax disciplinary policy to [a municipality] without showing a pattern of abuses that

13

transcends the error made in a single case.' [Citation.]" (*Quinn v. Guerrero*, *supra*, at p. 365.)

Accordingly, the trial court properly granted the County's motion for summary adjudication on the federal civil rights cause of action.

VII

OFFICER MUNOZ AND OFFICER TAYLOR: THE HOT CAR

As already discussed, the trial court granted summary adjudication for the County on the federal civil rights cause of action, to the extent that it was based on the acts of Officer Munoz, because he was not acting pursuant to a policy or custom of the County. We affirmed this ruling in part VI, *ante*.

It also granted summary adjudication for the County on the state civil rights cause of action, because it found no "threats, intimidation or coercion in the interference with a specified statutory or constitutional right."

It acknowledged that Officer Munoz's act of confining Sherman in the hot car could constitute both negligence and intentional infliction of emotional distress. It therefore denied summary adjudication on these causes of action as against the County. However, Sherman then voluntarily dismissed these causes of action as against the County.

It granted summary adjudication in favor of Taylor and the County on the negligence cause of action based on Taylor's actions because "the allegations, even

14

viewed in the light most favorable to Sherman, do not support a cause of action for negligence."

Finally, with respect to assault and battery, the trial court ruled: "Sherman was lawfully arrested, therefore any touching by [Officer] Munoz in placing Sherman in the patrol car was not unlawful. Sherman presents no facts to reflect that [Officer] Munoz used excessive force in placing him in the patrol car."

A.      *Federal Civil Rights Cause of Action.*

Officer Munoz is no longer a party, and, as we held in part VI, *ante*, the County cannot be liable for any federal civil rights violation by any of the officers.

Whether Officer Munoz violated Sherman's federal civil rights remains relevant, however, to Sherman's state civil rights cause of action against the County. Moreover, Sherman claims that confining him in the hot car was a federal civil rights violation, not only by Officer Munoz, but also by Officer Taylor, who participated in confining him. Accordingly, we must decide whether there was a triable issue of fact on this point.

In the trial court and here, Sherman has consistently contended that confining him in the hot car constituted excessive force in violation of the Fourth Amendment.

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard. [Citations.]" (*Plumhoff v. Rickard* (2014) 572 U.S. 765, 774.) It has been held that leaving a detainee in a hot patrol car for less than an hour is not unreasonable, especially when the detainee did not complain at the time and was not injured. (*Glenn v. City of Tyler* (5th Cir. 2001)

242 F.3d 307, 312 [30 minutes in unventilated vehicle in the sun]; *Joseph v. Donahue* (D. Minn. 2019) 392 F.Supp.3d 973, 990-991 [80 degrees for less than an hour, with windows open and door sometimes open]; *Arias v. Amador* (E.D. Cal. 2014) 61 F.Supp.3d 960, 966, 975-976 [14 minutes, with nearest window partially lowered]; *Lyle v. Dodd* (N.D. Ga. 1994) 857 F.Supp. 958, 967-968 [approximately an hour in "uncomfortably hot car"]; see also *Miller v. Sanilac County* (6th Cir. 2010) 606 F.3d 240, 251-252 [detention in freezing weather for 6 to 20 minutes].)

On the other hand, leaving a detainee in a hot patrol car for an extended time *can* be excessive force, especially when officers ignore the detainee's complaints and/or the detainee is injured as a result. (*Patel v. Lanier County Georgia* (11th Cir. 2020) ___ F.3d __, ___ [2020 U.S. App. LEXIS 25345, at pp. *10-*15] [two hours; outside temperature of 85 degrees; plaintiff suffered heatstroke]; *Burchett v. Kiefer* (6th Cir. 2002) 310 F.3d 937, 945-946 [90 degrees for three hours; officers refused request to roll down window]; *Kassab v. San Diego Police Dept.* (9th Cir. 2011) 453 Fed.Appx. 747, 748 [115 degrees for four hours, causing heatstroke].)

Here, Sherman was confined for about an hour in 140-degree heat, with one short break when Officer Taylor gave him some water. One hour is right on the cusp of the amount of time that has been found to be excessive. The level of heat, however, was extreme. Sherman complained at the time, by repeatedly asking for water. And, most important, he did sustain injuries, including heat exhaustion. Thus, there was at least a

16

triable issue of fact as to whether Officer Munoz and Officer Taylor violated Sherman's constitutional rights in this respect.

In their motion for summary judgment, defendants did not argue that Officer Taylor had qualified immunity for this act. We therefore do not decide this issue.

B.    *State Civil Rights Cause of Action.*

The Tom Bane Civil Rights Act (Civ. Code, § 52.1) (Bane Act or section 52.1), as relevant here, provides: "If a person . . . interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state" (*id*., subd. (b)), "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with . . . may institute and prosecute . . . civil action for damages . . . ." (*Id*., subd. (c).)

Accordingly, "[t]here are two distinct elements for a section 52.1 cause of action. A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion. [Citations.]" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67.)

Under the Bane Act — unlike under section 1983 — an officer cannot claim qualified immunity. (*Venegas v. County of Los Angeles* (2007) 153 Cal.App.4th 1230, 1240-1247.) Also unlike under section 1983, a municipality can be liable under the Bane

17

Act on a respondeat superior theory. (*M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F.Supp.3d 889, 897.)

We turn, then, to whether the violation was accomplished "by threat, intimidation, or coercion." There is no evidence of any threat or intimidation, so we focus on coercion.

In *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, which involved a lawful arrest followed by an overly long detention, the court held "that where coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." (*Id*. at p. 959.)

It reasoned that the California Supreme Court had held that the "threats, intimidation, or coercion" requirement was intended to prevent the Bane Act from extending to ordinary tort claims. (*Shoyoye v. County of Los Angeles*, *supra*, 203 Cal.App.4th at pp. 956-957.) If the fact of "overdetention," standing alone, were sufficient to show coercion, then the Bane Act would apply "where the overdetention occurs because of mere negligence rather than a volitional act intended to interfere with the exercise or enjoyment of the constitutional right." (*Shoyoye* at pp. 957-958.) It also reasoned that the several mentions of "violence" in the Bane Act indicated that it was not

intended "to provide relief for an overdetention brought about by human error rather than intentional conduct." (*Id*. at pp. 958-959.)[6]

*Shoyoye* has been followed in cases dealing with an assertedly unlawful detention (*Quezada v. City of Los Angeles* (2014) 222 Cal.App.4th 993, 1008), assertedly unlawful arrests and seizure of property (*Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at pp. 69-70), threats of arrest and prosecution (*Doe v. State of California* (2017) 8 Cal.App.5th 832, 843), and unlawful taxation (*County Inmate Telephone Service Cases* (2020) 48 Cal.App.5th 354, 369).

Starting in 2017, however, a split of authority developed. *Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766 declined to follow *Shoyoye*. (*Cornell v. City & County of San Francisco*, *supra*, at pp. 797-799.) It observed that "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged. Indeed, if the words

---

**6** *Shoyoye* also noted that the Legislature had rejected a proposed amendment to the Bane Act that would have deleted the words, "by threats, intimidation, or coercion"; the legislative history of the proposed amendment suggested that it was rejected because the deletion would make the Bane Act "'an alternative cause of action in virtually every tort action . . . .'" (*Shoyoye v. County of Los Angeles*, *supra*, 203 Cal.App.4th at p. 959.)

This reasoning, however, is particularly unpersuasive. Our Supreme Court warns that "'[w]e can rarely determine from the failure of the Legislature to pass a particular bill what the intent of the Legislature is with respect to existing law. "As evidences of legislative intent they [unpassed bills] have little value." [Citations.]' [Citations.] Moreover, . . . '[t]he declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law . . . . [T]he statute presently in effect [is binding], not . . . a legislative statement of intent that failed to become law.' [Citation.]" (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 378-379.)

of the statute are given their plain meaning, the required 'threat, intimidation or coercion' can never be 'independent' from the underlying violation or attempted violation of rights, because this element of fear-inducing conduct is simply the means of accomplishing the offending deed . . . ." (*Id*. at p. 800.) The court was also concerned that *Shoyoye* created an "absolute," "judicially-fashioned immunity" for constitutional violations that were inherently coercive. (*Id*. at pp. 800-801.)

It opined that, "read closely, *Shoyoye*'s discussion of coercion 'independent from the coercion inherent in the wrongful detention itself' was aimed at separating tort liability from statutory liability in the specific context of a jail overdetention following a lawful arrest . . . ." (*Cornell v. City & County of San Francisco*, *supra*, 171 Cal.App.5th at p. 799.) "[T]he better approach" — at least in an unlawful arrest case — "is to focus directly on the level of scienter required to support a Section 52.1 claim, without the trappings of *Shoyoye*'s frame of analysis." (*Ibid*.) In particular, it held, section 52.1 requires the "specific intent to violate protected rights." (*Cornell,* at p. 799 (capitalization altered); see also *id*. at pp. 801-802.) "The . . . specific intent standard . . . accomplishes in substance the same thing as the independent from inherent coercion test since it ensures ordinary negligence is not cognizable under Section 52.1." (*Id*. at p. 802.)

Before *Cornell*, the Ninth Circuit had followed *Shoyoye*. (*Lyall v. City of Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1196.) In *Reese v. County of Sacramento* (9th Cir. 2018) 888 F.3d 1030, however, it overruled *Lyall* and followed *Cornell*. (*Reese v.*

*County of Sacramento*, *supra*, at pp. 1042-1044 & 1044, fn. 5.) It agreed with *Cornell* that "the plain language of Section 52.1 gives no indication that the 'threat, intimidation, or coercion' must be independent from the constitutional violation." (*Reese, supra,* at p. 1043.) Rather, "the specific intent requirement articulated in *Cornell* is consistent with the language of Section 52.1, which requires interference with rights by 'threat, intimidation or coercion,' words which connote an element of intent." (*Id*. at p. 1044.) A different panel of the Ninth Circuit agreed with *Reese* in *Rodriguez v. County of Los Angeles* (9th Cir. 2018) 891 F.3d 776, 799-802.

*B.B. v. County of Los Angeles* (2018) 25 Cal.App.5th 115, 129-133, revd. on other grounds in *B.B. v. County of Los Angeles* (2020) ___ Cal.5th ___ [2020 Cal. LEXIS 5145],[7] likewise followed *Cornell*. (*B.B. v. County of Los Angeles*, *supra*, at pp. 128-133.) It said, "Although the *Shoyoye* court seemed to suggest a categorical rule requiring independent coercion *whenever* coercion is inherent in the underlying civil rights violation, the court's analysis of the statutory text indicates it meant the rule to apply only where the underlying violation (and the incidental coercion that accompanied it) was the product of *unintentional or negligent* error." (*Id*. at p. 130.) Moreover, "[t]his reading of *Shoyoye* is compelled by the statutory text." (*Id*. at p. 131.) "Like *Cornell* and *Reese*, we conclude that, to establish liability under the Bane Act, a plaintiff must prove the

---

[7] Because it was reversed on other grounds, *B.B.* "is citable and has binding or precedential effect . . . ." (Cal. Rules of Court, rule 8.1115(e)(2).)

defendant acted with a specific intent to violate the plaintiff's civil rights. [Citation.]" (*Id.* at p. 133, fn. omitted.)

We agree with *Cornell*. *Shoyoye*'s statement that the Bane Act requires a showing of coercion independent from the coercion inherent in the constitutional violation did not follow from the language of the statute, nor from the court's own reasoning. What does properly follow is a specific intent requirement.

Here, confining Sherman in the hot patrol car was inherently coercive. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law. [Citation.]" (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883.) Sherman had a right under the law to be free of excessive heat. Admittedly, the arrest was lawful; thus, Officer Munoz had a privilege to confine Sherman in a patrol car. However, he did not have a privilege to confine him there in excessive heat, any more than he would have had a privilege to confine him there with an alligator inside. Nevertheless, Sherman was forcibly prevented from leaving.

Defendants did not argue below that Sherman could not show specific intent as required by *Cornell*. Accordingly, Sherman was not required to introduce evidence of the necessary specific intent. Even on this record, however, it is clear that Officer Munoz must have known it was 100 degrees outside, and therefore that it would be even hotter

22

inside the patrol car, which was in direct sunlight. From this knowledge, it is at least inferable that he specifically intended to subject Sherman to excessive heat.

We therefore conclude that there are triable issues of fact with respect to Sherman's Bane Act cause of action as against the County, to the extent that it was based on acts of Officer Munoz. Moreover, Officer Taylor, after opening the car door to give Sherman water, reconfined him there for another 15 minutes. Hence, there are also triable issues of fact with respect to this cause of action as against Officer Taylor, and as against the County based on this act of Officer Taylor.

C.      *Assault and Battery*.

The trial court ruled that Officer Munoz did not commit a battery because "Sherman was lawfully arrested, therefore any touching by Munoz in placing Sherman in the patrol car was not unlawful."

Sherman contends that this was error, because "the instrumentality of the assault and battery was the heat of the patrol car . . . ." (Italics omitted.)

Sherman did not raise this contention in the trial court. A fortiori, he did not offer any argument or authority that would support it. His references to how hot it was in the car were insufficient to alert the trial court that it was called on to decide this issue. Once again (see part IV, *ante*), a new theory generally may not be presented for the first time on appeal. We therefore conclude that the trial court properly granted summary adjudication on the assault and battery cause of action, to the extent that it was based on the acts of Deputy Munoz (and Deputy Taylor) of placing Sherman in the hot patrol car.

23

D.    *Negligence.*

Sherman had alleged and argued that Officer Taylor was negligent in, among other things, putting him back in the hot car.  In response, defendants argued only that Sherman "made no complaint of injuries as a result of anything [Officer] Taylor did" and that Sherman did not seek medical treatment.

In this appeal, Sherman argues again that Officer Taylor was negligent because, among other things, he put him back in the hot car.  This time, defendants do not respond at all.

Sherman's testimony about his own injuries and the photographs of them were sufficient to raise a triable issue of fact as to whether he was injured.  As Sherman's counsel argued below, "an injury is an injury."  "None of the causes of action plead[ed] . . . require treatment after the injury."  As to the act of putting Sherman back in the hot car, defendants do not challenge any of the other elements of negligence.  Hence, the trial court erred by granting summary adjudication in favor of the County and Officer Taylor on the negligence cause of action.

VIII

OFFICER TAYLOR:  SHOVING A WATER BOTTLE INTO SHERMAN'S MOUTH

The trial court ruled that Sherman consented to have Officer Taylor place the water bottle in his mouth.  Sherman agreed that he consented to this; he maintains, however, that he did not consent to the *manner* in which Officer Taylor did so.

24

Consent is a defense to torts in general. (Rest.2d Torts, § 892A, subd. (1).) But "[t]o be effective, consent must be [¶] . . . [¶] . . . to the particular conduct, or to substantially the same conduct." (Rest.2d Torts, § 892A, subd. (2).)

While he was in the patrol car, Sherman repeatedly asked for water. He admitted that he consented "to having the water bottle put in [his] mouth." He opened his mouth; Officer Taylor then "shoved a bottle of water down [his] mouth" and "pour[e]d . . . some of the contents" into his mouth.

Sherman "gulp[ed] the water down." Within "[s]econds," however, he choked, gagged, and coughed. When asked why he choked, he answered: "Because the water was — I was in a position that it was gulping down and — and it was just forcible where I was — started coughing and whatnot." He could not point to anything Officer Taylor did beyond putting the bottle in his mouth: "I have no idea what he did." He did not know if Officer Taylor "squirted" the bottle or if it was "just gravity[.]"

In sum, Sherman asked for water; because he was handcuffed, the only way he could drink it was by letting Officer Taylor put the bottle in his mouth. He consented to this. Most important, he has not shown any way in which Officer Taylor's conduct exceeded the scope of his consent. While he characterized that conduct as "shov[ing]" and as "forcible," it is clear that he did not choke immediately, nor did he choke on the bottle itself. He was able to swallow some of the water before he began choking.

25

Thus, the record shows that Officer Taylor did exactly what Sherman consented to have him do — place a water bottle in Sherman's mouth so he could drink — no more and no less.

This is dispositive of all of Sherman's causes of action, to the extent that they are based on Officer Taylor shoving the water bottle in his mouth. (Civ. Code, § 3515 ["He who consents to an act is not wronged by it."]; see *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 166 [battery]; *Graham v. Sheriff of Logan County* (10th Cir. 2013) 741 F.3d 1118, 1123-1124 [federal civil rights].)[8]

IX

OFFICER TAYLOR:  FAILING TO SUMMON MEDICAL CARE;

OFFICER BRYANT:  INDUCING SHERMAN TO REFUSE MEDICAL CARE

Sherman concedes that he cannot show intentional infliction of emotional distress based on Officer Bryant's actions.  He also does not argue that Officer Bryant committed an assault and battery.

---

[8]     In opposition to the motion for summary judgment, Sherman argued that his cause of action for intentional infliction of emotional distress as against Officer Taylor was based solely on shoving the water bottle in his mouth.  He did not argue that it was based on confining him in the hot car.  We deem him to have forfeited such a contention.

He contends, however, that there was sufficient evidence that Officer Bryant and Officer Taylor are liable for federal and state civil rights violations and for negligence.[9]

A.  *Federal Civil Rights Cause of Action*.

Sherman asserts that the relevant federal constitutional provision is the Fourth Amendment.  Not so.

A prisoner's claim of a denial of medical care is governed by the Eighth Amendment.  (*Estelle v. Gamble* (1976) 429 U.S. 97, 104-105.)  By contrast, a pretrial detainee's claim of a denial of medical care is governed by Fourteenth Amendment, and specifically the due process clause.  (*City of Revere v. Massachusetts General Hosp.* (1983) 463 U.S. 239, 244.)

The elements of both types of claims, however, are essentially identical.  (*Irwin v. City of Hemet* (1994) 22 Cal.App.4th 507, 520.)  "The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.' [Citation.]"  (*City of Revere v. Massachusetts General Hosp.*, *supra*, 463 U.S. at pp. 243-244.)  Likewise, "the Fourteenth Amendment is violated if state officials are deliberately indifferent to a pretrial detainee's serious medical needs. [Citation.]"  (*Rife v. Oklahoma Department of Public Safety* (10th Cir.

---

[9]  Sherman complains that Officer Munoz and Officer Taylor failed to look at his MedicAlert bracelet.  That bracelet related solely to Sherman's risk of stroke.  As Sherman — fortunately — did not have a stroke, this failure caused no damages.

Sherman also complains that Officer Munoz ignored his requests for water while he was in the patrol car.  This is not a denial of medical care; it is part and parcel of Sherman's claim of excessive force, which we discussed in part VII.B, *ante*.

2017) 854 F.3d 637, 647, cert. den. sub nom. *Dale v. Rife* (2017) ___ U.S. ___ [138 S. Ct. 364].)

      1.    *Officer Bryant.*

Defendants moved for summary adjudication on this claim on the sole ground that Sherman voluntarily refused treatment. They did also argue that Officer Bryant had qualified immunity, but again, only because Sherman voluntarily refused treatment.

However, there is a triable issue of fact on this point. Sherman was suffering from burns, blisters, dehydration, and heat exhaustion. As a result, he was "weak," "confused," and "disoriented." He "was not in a state where [he] could make a rational decision." It was Officer Bryant who brought up the idea of refusing service and warned him that if he did not, he might have to wait four hours. As they entered the hospital, he reminded Sherman of this. Sherman was mindful of Officer Bryant's uniform and authority. Sherman testified: "In my weakened state, I reasonably understood [Officer] Bryant's admonitions to be directives." (Capitalization altered.)

"As generally understood, the term 'voluntary' at minimum 'means an exercise of will, i.e., it "implies freedom from any compulsion that could constrain one's choice." [Citation.]' [Citations.]" (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1064.) Based on these facts, a reasonable trier of fact could conclude that Officer Bryant exercised undue influence and coercion, and thus that Sherman did not refuse service voluntarily.

Defendants argue that Officer Bryant's statement that Sherman might have to wait four hours was true. The record does not establish this; it only shows that Sherman did not have personal knowledge that it was not true. In any events, truth is not a defense to an undue influence claim. (*Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 182.)

Defendants also argue that (1) Sherman did not have a serious medical need, (2) Officer Bryant was not deliberately indifferent, and (3) Sherman had no resulting damages. They further argue that Officer Bryant was entitled to qualified immunity because it was not clearly established that, on these facts, he was being deliberately indifferent to a serious medical need.

We repeat, however, that defendants did not move for summary judgment on any of these grounds. "We generally will not consider an argument '["]raised in an appeal from a grant of summary judgment . . . if it was not raised below and requires consideration of new factual questions." [Citation.]' [Citations.]" (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335.) Here, Sherman did not have fair notice that he needed to introduce evidence on these questions. We therefore decline to address them.

2. *Officer Taylor.*

Sherman also claims that Officer Taylor unconstitutionally denied him medical care. Defendants moved for summary adjudication on this claim on the sole ground that Sherman never told Officer Taylor he did not feel well. He did say, "I don't feel well," but at that point, Officer Taylor had closed the car door and was walking away, and Sherman admittedly did not know whether Officer Taylor heard him.

29

A claim for the denial of medical care, however, does not require that the detainee must request medical care. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' [Citations.]" (*Taylor v. Hughes* (11th Cir. 2019) 920 F.3d 729, 733; accord, *DePaola v. Clarke* (4th Cir. 2018) 884 F.3d 481, 486.) Sherman testified that Officer Taylor could see that he was suffering from "symptoms of heat exhaustion, including heavy sweating, . . . weakness, impaired breathing, and impaired speech." It is a permissible inference that a layperson would have known Sherman needed medical care.[10]

There are lurking issues as to whether Officer Taylor showed deliberate indifference to this medical need and whether Sherman suffered any damages as a result. There is also a question as to whether Officer Taylor is entitled to qualified immunity on this claim. Defendants, however, did not move for summary judgment on any of these grounds.

B.      *State Civil Rights Cause of Action*.

Under the Bane Act, for the reasons discussed in part VII.B, *ante*, Sherman did not have to show any coercion separate and apart from the federal constitutional violation

---

[10]      Again (see fn. 10, *ante*), in opposition to the motion for summary judgment, Sherman did not argue that his cause of action for intentional infliction of emotional distress as against Officer Taylor was based on denying him medical care. We deem him to have forfeited such a contention.

itself. And for the reasons stated in part IX.A, *ante*, there were triable issues of fact as to whether Officer Bryant and Officer Taylor coerced Sherman.

C.    *Negligence.*

1.    *Officer Bryant.*

Defendants moved for summary adjudication on the negligence cause of action, with respect to Officer Bryant, on the ground that "[t]he injuries [Sherman] complains of have no relation to anything [Officer] Bryant did or did not do."

Sherman responded that he "suffer[ed] continued excruciating pain" and "emotional distress."

Defendants do *not* argue that damages for pain and/or emotional distress are not recoverable on these facts. They merely argue that the fact that Sherman did not seek medical care after he was released proves that he was not in pain. This does not follow. He may have treated himself; there are over-the-counter treatments for burns, including pain-killers.

We recognize that Sherman arrived at the hospital at 3:00 p.m. and was released at 4:00 p.m. Thus, Officer Bryant prevented Sherman from obtaining treatment only for about an hour (perhaps less, if we knew how long it would have taken to obtain treatment at the hospital; perhaps more, if we knew how long it took Sherman to obtain self-treatment). On this record, however, we cannot say that suffering the pain of second degree burns, with blisters, for about an hour was so de minimis as to be noncompensable.

31

2.     *Officer Taylor.*

Defendants moved for summary adjudication on the negligence cause of action, with respect to Officer Taylor, on the ground that "[Sherman] did not ask [Officer] Taylor for medical attention." Officer Taylor could see, however, that Sherman had "symptoms of heat exhaustion, including heavy sweating, . . . weakness, impaired breathing, and impaired speech." This raised a triable issue of fact as to whether Officer Taylor should have known that he needed medical care.

X

DISPOSITION

1. Summary adjudication of the federal civil rights cause of action is reversed as against Officer Taylor and Officer Bryant but affirmed as against the County.

2. Summary adjudication of the state civil rights cause of action is reversed.

3. Summary adjudication of the assault and battery cause of action is affirmed.

4. Summary adjudication of the intentional infliction of emotional distress cause of action is affirmed.

5. Summary adjudication of the negligence cause of action is reversed.

6. Summary adjudication of the negligent hiring, training, and supervision cause of action has not been challenged in this appeal and is affirmed.

The matter is remanded for further proceedings not inconsistent with this opinion. In the interest of justice, Sherman is awarded costs on appeal against the County, but not

against Officer Taylor or Officer Bryant; Officer Taylor and Officer Bryant shall bear their own costs, if any.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                    P. J.


We concur:

CODRINGTON _____
                            J.

MENETREZ _____
                            J.

33

| | | |
|---|---|---|
| Federal civil rights | | |
| County | Affirmed | Part VI |
| Taylor | Reversed | Parts VII.A and IX.A.2 |
| Bryant | Reversed | Part IX.A.1 |
| State civil rights | | |
| County | Reversed | Parts VII.A and VII.B |
| Taylor | Reversed | Parts VII.A, VII.B, VIII, and IX.B |
| Bryant | Reversed | Part IX.B |
| Assault and battery | | |
| County | Affirmed | Part VII.C |
| Taylor | Affirmed | Parts VII.C and VIII |
| Bryant | Not challenged on appeal | |
| Intentional infliction of emotional distress | | |
| County | Voluntarily dismissed | |
| Taylor | Affirmed | Part VIII |
| Bryant | Not challenged on appeal | |
| Negligence | | |
| County | Voluntarily dismissed | |
| Taylor | Reversed | Part VII.D, IX.C.2; but see Part VIII |
| Bryant | Reversed | Part IX.C |
| Negligent hiring | | |
| County | Not challenged on appeal | |